**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**SANDYLAND PRODUCE, LLC,**

       **Plaintiff,**

**-vs-**                                                                      Case No. 6:02-cv-1515-Orl-31JGG

**TAR HEEL FARMS, INC., SCOTT S. PAINTER,**

       **Defendants.**

_____

**MEUERS LAW FIRM, P.L. ,**

       **Non-Party Claimant on Charging Lien,**

**-vs-**

**SANDYLAND PRODUCE, LLC,**

       **Judgment Creditor.**

_____

## **ORDER**

This cause came on for consideration on April 3, 2007 on the following motion:

> **MOTION:** **"SECOND RENEWED NOTICE OF CHARGING LIEN, REQUEST FOR THE COURT TO DETERMINE AMOUNT THEREOF"** (Doc. No. 165)
>
> **FILED:** January 18, 2007
>
> _____
>
> **THEREON** it is **ORDERED** that the motion is **GRANTED** as unopposed. Scheduling Order to follow.

Attorneys Lawrence H. Meuers and Katy L. Koestner represented Plaintiff Sandyland Produce, LLC ["Sandyland"] before withdrawing as counsel on February 25, 2005, after entry of judgment in favor of Sandyland. *See* Docket Nos. 126, 147. The attorneys, on behalf of Meuers Law Firm, P.L. ["the Firm" or "Meuers Law Firm"],[1] now ask this Court to determine the amount of a lien which Meuers Law Firm claims against proceeds that Sandyland may someday recover on the judgment in this case. Docket No. 165 at 2, 20. Meuers Law Firm explains that Sandyland has refused to pay their contingency fee pursuant to their "Representation Agreement," and requests that the Court "[r]ecognize the validity of the [attorneys'] Charging Lien on the expected recovery in this matter; establish a Briefing Schedule or in the alternative, schedule an evidentiary hearing to adjudicate the amount of said Charging Lien." *Id.* at 20. Sandyland did not file a memorandum in opposition.

The undersigned conducted a hearing on Meuers Law Firm's motion on April 4, 2007. Koestner appeared as counsel for Meuers. Attorney Kimble Clark Bouchillon appeared as counsel for Sandyland. Bouchillon confirmed that Sandyland does not oppose Meuers Law Firm's motion.

## I. PROCEDURAL HISTORY

Sandyland, a limited liability company located in Tarboro, North Carolina, grows produce. 125-2 at 1. In March 2002, Sandyland entered into an oral agreement with Tar Heel Farms, Inc. ["Tar Heel"] and Scott Painter, President of Tar Heel.[2] *Id.* at 4. Tar Heel agreed to act as Sandyland's agent and use its best efforts to timely sell Sandyland's produce. *Id.* at 5. Sandyland would invoice Tar

---

[1] Three attorneys associated with Meuers Law Firm, P.L. – Meuers, Koestner, and John Joseph Rearden – represented Sandyland. The Local Rules contemplate that attorneys, not law firms appear as counsel for parties. *See* Local Rule 2.01. Meuers and Koestner filed the motion on behalf of the law firm (Docket No. 165 at 2), because the representation agreement is between Sandyland and the firm, and because the law firm itself claims the lien.

[2] Tar Heel is Florida corporation, and Painter owns fifty percent of the shares of Tar Heel.

Heel for the produce supplied, and Tar Heel would sell the produce to customers and pay Sandyland pursuant to the invoices. In June 2002, Sandyland and Tar Heel executed a "Grower-Packer Agreement," which memorialized some of their oral agreement. Under the terms of the Grower-Packer Agremeent, Tar Heels' objective as Sandyland's agent was "to return market price less commission, based upon the quality of merchandise received." *Id.* at 4, 10.

By the end of the growing season, Sandyland had generated invoices for Tar Heel in the total amount of $452,169.75, but Tar Heel still owed on some of those invoices. Sandyland further believed that Tar Heel failed to obtain the market value of the produce supplied, and otherwise failed to fulfill its duties as Sandyland's agent.

On August 15, 2002, Sandyland executed a "Representation Agreement" in which it retained the Meuers Law Firm to represent it "in enforcing [Sandyland's] PACA trust claim against Tar Heel . . ." *See* Docket No. 165-2 at 2. Under the terms of the Representation Agreement, Sandyland agreed to make a non-refundable payment of $15,000 ($5,000 due upon execution of the Representation Agreement, and $10,000 due within sixty days after the execution), which would cover the Firm's "services to record the current outstanding accounts receivable." *Id.* The Agreement provides:

> In addition, the Firm is entitled to retain 50% of any monies recovered above and beyond the current accounts the current accounts receivable on any and all claims you may have against the Defendants. These claims include allegations that Tar Heel owes you additional money on the transactions already paid or on the accounts receivable above and beyond the amount invoiced. The accounts receivable currently total approximately $261,000.00. This amount may change due to price after sales transactions and transactions not yet invoices [sic]. These fees cover the matter through settlement or judgment in the trial court . . . . [Sandyland] agree[s] that the Firm can deduct the contigent fee from any additional recovery obtained.

Docket No. 165-2 at 2. The Representation Agreement "must be construed and its performance enforced under Florida law." *Id.* It further states that if Sandyland disputes a fee charged, it must notify the Firm in writing within fifteen days of receipt of the bill, and that if Sandyland and the Firm "cannot resolve the dispute, [Sandyland] and the Firm agree any dispute under this [Representation Agreement] **must be settled by arbitration** in accordance with Chapter 14 of the Rules Regulating the Florida Bar and Chapter 682, Florida Statutes." *Id.* at 2 (bold emphasis added). The agreement also provided that Sandyland and the Firm both waived their "right to an evidentiary hearing." *Id.*

On December 18, 2002, Sandyland, through its counsel Meuers and Koestner, filed a complaint against Tar Heel and Painter. Docket No. 1.[3] Sandyland sought to hold Defendants liable for breach of the Grower-Packer Agreement; violation of the trust pursuant to the Perishable Agricultural Commodities Act, 7 U.S.C. § 499 ["PACA"]; and Painter's breach of fiduciary duty to the PACA trust. *Id.* On June 13, 2003, Tar Heel and Painter paid Sandyland $59,247.25, satisfying all of their outstanding invoices. Docket No. 165 at 6.

After a three-day bench trial in July 2004, the district court entered a verdict on November 2, 2004, in favor of Sandyland, jointly and severally against Tar Heel and Painter in the amount of $412,849.66,[4] plus prejudgment interest, for Defendants' breach of the Grower-Packer agreement and Painter's breach of fiduciary duty to PACA trust. Docket No. 125-2 at 13-16. The Clerk entered judgment against Tar Heel and Painter on November 3, 2004. Docket No. 126.

---

[3] Sandyland also filed the complaint against Defendants Ambrosia Farms of Pompano Beach, Inc. ["Ambrosia Farms"] and Archie J. Sagers, Sr. Docket No. 1. Ambrosia and Sagers settled their claims in August 2004. Docket No. 107.

[4] The district court calculated the judgment amount "by taking the market price for the invoices for produce 'sold' by Defendant ($908,445.79), subtracting a ten percent commission, and then subtracting the amount paid by Defendant to Plaintiff ($404,751.55)." Docket No. 125-2 at 15-16.

Tar Heel filed a notice of appeal of judgment to the United States Court of Appeals for the Eleventh Circuit on December 1, 2004. Docket No. 135. On January 17, 2005, Laurence H. Meuers, Koestner, and Joseph Rearden (another attorney from the Meuers Law Firm) filed a motion to withdraw as counsel for Sandyland, and "Notice of Charging Lien." Docket No. 143. The attorneys stated that the attorneys and Sandyland could not agree on fees for post-judgment work and for the appeal. Counsel also stated that the Meuers Law Firm and Sandyland disagreed on the amount of fees owed under their Representation Agreement. Sandyland asked the Court to "[r]ecognize the validity" of [the Firm's] Charging Lien on the expected recovery in this matter" and to set a briefing schedule and adjudicate the amount of the charging lien. *Id.* at 10. The undersigned denied the motion without prejudice, stating:

> This denial is made without prejudice to Plaintiff's counsel's right to file, within 20 days of the entry of this order, a motion to withdraw that demonstrates how this court would have subject matter jurisdiction over a breach of contract case involving a non-party to the instant case and whether this court would have the authority to permit withdrawal of an attorney in a case that is now on appeal. Any such motion should be accompanied by a supporting legal memorandum and comply with Local Rule 3.01(g).

Docket No. 144.

On February 17, 2005, attorney Neil O'Toole filed a notice of appearance on behalf of Sandyland. Docket No. 145. On February 24, 2005, Meuers, Koester, and Rearden filed an amended motion for leave to withdraw as counsel for Sandyland, and request for the Court to determine the amount of the charging lien. Docket No. 146. The undersigned granted the motion to withdraw, but denied the motion to determine the amount of charging lien, "no basis for <u>federal</u> court jurisdiction having been shown." Docket No. 147 (emphasis in original).

On March 11, 2005, Meuers Law Firm filed an objection to the undersigned's order denying the charging lien motion. Docket No. 149. O'Toole, counsel for Sandyland, did not file a memorandum in opposition to the objection. On April 5, 2005, the district court sustained the Firm's objection; and overruled the undersigned's order on the charging lien motion. Docket No. 152. The district court found that "it has supplemental jurisdiction to determine the charging lien issue" and "[t]his Court will maintain jurisdiction over the fee dispute." *Id.*

On August 25, 2006, Meuers Law Firm filed another motion for the Court to determine the amount of a charging lien. Docket No. 161. The Local Rule 3.01(g) certificate stated that the attorneys "attempted to confer[,]" but failed to state that they actually conferred. *Id.* at 121. Again, Sandyland did not file a memorandum in opposition to the charging lien. On September 15, 2006, the undersigned denied the motion without prejudice "to refile a motion containing a Local Rule 3.01(g) certification that states when and with whom counsel conferred, as well as how long counsel spent in their good faith effort to resolve this matter." Docket No. 163 at 2.

On January 18, 2007, Meuers Law Firm filed a "Second Renewed Notice of Charging Lien, Request for the Court to Determine Amount Thereof" now before the Court. Docket No. 165. Koester electronically filed and served a copy of the motion on O'Toole, counsel for Sandyland. *See id.* (Notice of Electronic Filing). In the motion, according to the Local Rule 3.01(g) certificate, Koestner called, left messages for, and sent emails to O'Toole. *See id.* at 23-24. O'Toole failed to respond, and failed to file a memorandum in opposition to the motion.

The district court referred the motion to the undersigned on February 22, 2007. On March 15, 2007, the undersigned set a hearing on Meuers Law Firm's motion. Docket No. 167. On March 27,

2007, attorney Kimble Clark Bouchillon (from the same law firm as O'Toole) filed a notice of appearance on behalf of Sandyland.[5]

On April 4, 2007, the undersigned conducted a hearing on the Firm's motion. The undersigned raised a number of issues: the mandatory arbitration clause regarding attorney's fees, whether the parties waive jury trial, whether the case should be re-opened, whether the parties have considered consenting to proceed before the magistrate judge, and whether settlement is likely, either before a mediator or the magistrate judge. The Court adjourned to permit counsel to confer on those issues.

## II.   THE MOTION

Meuers Law Firm asks this Court to determine the amount of a lien which the Firm claims against proceeds on the judgment in this case.[6] Docket No. 165 at 2, 20. The Firm also requests that the Court "[r]ecognize the validity of the [attorneys'] Charging Lien on the expected recovery in this matter; establish a Briefing Schedule or in the alternative, schedule an evidentiary hearing to adjudicate the amount of said Charging Lien." *Id.* at 20.

As stated earlier, the motion is unopposed. Sandyland did not oppose the motion because, according to Sandyland's counsel, the Meuers Firm is "entitled" to a charging lien, a briefing schedule, and an evidentiary hearing. Further, counsel for the Meuers Firm and Sandyland have conferred, and agreed to mediation before a private mediator and a sixty-day discovery period, if mediation is

---

[5]In subsequent motions for leave to bring electronic equipment into the courthouse for the hearing on the motion, counsel have apparently had no problems conferring pursuant to Local Rule 3.01(g). *See* Docket Nos. 170, 171.

[6]According to the parties at oral argument, there is no active effort at present to collect on the judgment, and no proceeds.

unsuccessful. Counsel also jointly request a bench trial before the district judge on the trial term beginning October 1, 2007 to adjudicate the amount of the charging lien. Accordingly, it is

**ORDERED** that the case be **REOPENED**; it is

**FURTHER ORDERED** that Meuers Law Firm, P.L.'s "Second Renewed Notice of Charging Lien, Request for the Court Determine Amount Thereof" [Docket No. 165] is **GRANTED** as unopposed. It is

**FURTHER ORDERED** that on or before April 20, 2007, the Meuers Law Firm, P.L., shall advise the Court in writing of the name of the mediator and date reserved for mediation. A Scheduling Order will follow.

**DONE** and **ORDERED** in Orlando, Florida on April 9, 2007.

_____
JAMES G. GLAZEBROOK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

The Honorable Gregory A. Presnell
Counsel of Record
Unrepresented Parties